In the United States District Court
for the District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CR. NO. 05-10047-GAO |
| v. | ) |
| | ) |
| GILMARI PADILLA | ) |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

**I.  INTRODUCTION**

Defendant Gilmari Padilla has asserted in her sentencing memorandum that she should be sentenced to probation. The principal grounds are that Padilla's conduct was aberrant and that she has a four-year old daughter. Additional grounds are raised in passing. The United States addresses those arguments in this memorandum, thereby supporting its position that Padilla's conduct must be punished with a period of incarceration.

**II.  PADILLA IS NOT ELIGIBLE FOR AN ABERRANT BEHAVIOR ADJUSTMENT**

   **A.  There Were Two or More Criminal Acts**

A downward adjustment based on section 5K2.20 requires, among other things, that a defendant's conduct be aberrant, i.e., a single criminal event. See, e.g., United States v. Cacho-Bonilla, 404 F.3d 84, 95 (1st Cir. 2005)(aberrant behavior is a discouraged departure). Padilla argues in her sentencing memorandum (and in her objections to the PSR) that she committed a single crime. This is inaccurate. While it is true that Padilla was *charged* with one criminal act, the facts establish that Padilla committed at least two, and possibly more, criminal acts.

Padilla conceded during the course of a proffer to the

government, and by not objecting to the PSR, that she entered into a marriage on July 11, 2002 with Rodolfo Flores for the sole purpose of aiding Mr. Flores in evading immigration rules and regulations. PSR, ¶ 27. Although not charged, this is a crime; Section 1325(c) of Title 8, United States Code provides:

> Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, fined in accordance with Title 18, or both.

Padilla has conceded that she entered into the marriage with Flores for the purpose of evading immigration laws; therefore, she committed at least one crime in connection with the first of the two marriages for hire she committed. She may well have committed additional crimes, albeit part of the same general scheme, when she was interviewed by federal officials in connection with Mr. Flores' green card application. It is highly likely that she was asked about the validity of the marriage and whether it was entered into for legitimate reasons during the course of the interview; if so, she must have lied to a federal government employee in violation of Chapter 1001 of Title 18. In any event, the marriage itself was a federal crime. Thus, the two marriages for money, entered into on dates two months apart and during separate trips to Florida, cannot be deemed a "single criminal occurrence" or a "single criminal transaction," United States v. Rivera-Rodriquez, 318 F.3d 268, 275-76 (1st Cir. 2003).

### B. The Charged Crime Involved Significant Planning

Padilla traveled to Florida a second time and married a second man, Dennis Orellana, on or about August 26, 2002. PSR ¶28. While Padilla maintains that she went to Florida for vacation, in light of her prior trip and the fact that a close family member (her aunt) was one of the ring leaders of the marriage-for-hire operation that involved at least 15-18 people, it is not plausible that Padilla did not discuss the second marriage before she made the trip. Padilla claims that one of her motivations for committing the present offense was her difficult financial situation; this does not fit with taking a trip to Florida *unless* she went there with knowledge that she would make money.

Moreover, even if she went to Florida for innocent purposes, once there she agreed to enter into a second phony marriage and, **three weeks later**, furthered the criminal scheme by providing false information on the INS documents for which she is being sentenced. She knew what the purpose of the marriage was, she knew that she would be required to falsify INS documents because her payment for the first marriage was in two parts- with the second part contingent upon completing the green card application procedure. So by the time she falsely stated that she had no prior marriages, Padilla had been planning the completion of the crime for at least three weeks. Nor, given the repeated marriages and the advance planning, can it be said that this was "such a marked deviation from [her] prior life that it has all the characteristics of the

3

foolish and thoughtless act of a [person] pushed over the brink," United States v. Langille, 324 F.Supp.2d 38, 43 (D. Me. 2004).

"[It is] obviously not the case that every defendant in Criminal History Category I will be qualified for an aberrant behavior departure," United States v. Grandmaison, 77 F.3d 555, 564 (1st Cir. 1996); Rivera-Rodriguez, 318 F.3d 268, 275 (1st Cir. 2003)(downward departures for aberrant behavior are restricted to "extraordinary" cases); United States v. Bailey, 2005 WL 1532012, *2 (D.Me. 2005).[1]

### III. ONLY A SENTENCE THAT INCLUDES INCARCERATION MEETS THE STATUTORY REQUIREMENTS

It is the government's position that a sentence of four months' incarceration, which is at the low end of the guidelines range and is what the government agreed to recommend in the plea agreement, is reasonable and appropriate.

A sentence that does not include a period of incarceration would not meet the requirements of 18 U.S.C. § 3553 because it would not adequately promote respect for the law, reflect the seriousness of the crime or provide sufficient deterrence. These requirements will not be met unless some period of incarceration is

---

[1] Although not expressly argued for, defendant does not qualify for a downward departure based on her family circumstances, either. Although her parental status is referred to at least five times in her six-page memo, there is no evidence that defendant's family circumstance is extraordinary and, of course, the mere fact she is a parent does not distinguish defendant from other convicted felons. See, e.g., Grandmaison, 77 F.3d 555, 564; United States v. Pereira, 272 F.3d 76 (1st Cir.2001); United States v. Thompson, 234 F.3d 74 (1st Cir.2000).

imposed such that defendant, and anyone who might contemplate committing similar crimes, understands that a marriage for hire is not "easy money." The message sent has to be that you do not simply walk away, albeit with a felony conviction, if you get caught.[2]

Moreover, it is not clear that defendant fully appreciates how serious her conduct is and understands this in a way that will allow her to avoid making similar mistakes in the future. For example, Padilla told the probation officer that her boyfriend had no reaction to her involvement in the instant offense, PSR § 56, and that she herself, while stressed by it, did not think she could benefit from counseling. PSR ¶ 13. After the present offense was committed, but before her arrest, defendant co-signed a mortgage in the amount of $140,790 for a loan taken out by the husband of defendant's cousin. PSR ¶ 82B. While this is not criminal, it illustrates the government's concern that Padilla, as a young adult, does not fully appreciate the consequences of her actions. Padilla also co-signed the loan for her boyfriend's car without being on the title, PSR ¶ 82B. This conduct, it seems to the government, is part of a continuum stretching to defendant's desire to "help her aunt" by committing the present offense. See

---

[2] This is why another session of this Court imposed a six month period of incarceration after a defendant pled guilty to similar charges (making a false statement to a government officer), notwithstanding defendant's impaired health; see United States v. Anderson, 260 F.Supp.2d 310 (D. Mass. 2003)(Wolf, J.).

defendant's sentencing memorandum at 4.

**IV.  PADILLA SHOULD BE FINED**

In addition to a period of incarceration, Padilla should also be fined at least $6,000.00 to assure that she does not financially benefit from her crime and the relevant conduct.  Although she has limited means, she works and has a positive bank balance.  Forcing her to disgorge her ill-gotten gains, which amounted to $5,500.00, will add credence to the deterrent message that it is not worthwhile to commit this type of crime.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN,
                              United States Attorney


                              _/s/thomas e. kanwit_____
                              THOMAS E. KANWIT
                              Assistant U.S. Attorney